**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DWIGHT A. STATEN, | CASE NO. CV 17-3973 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Dwight A. Staten ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 13-15). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On August 20, 2015, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, alleging a disability onset date of August 1, 2015. (AR 114-23). The Commissioner denied Plaintiff's application, which was designated as a "prototype case."[1] (AR 35-44). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 14, 2016.[2] (AR 27-34, 54). The ALJ issued an adverse decision on January 12, 2017, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that he can perform. (AR 11-21). On April 5, 2017, the

---

[1] A "prototype case" designates a single decision maker to make the initial determination and eliminates the reconsideration step in the administrative review process. See 20 C.F.R. §§ 404.906(a), 416.1406(a).

[2] At the November 14, 2016 hearing, Plaintiff did not appear, but his attorney was present. (AR 29-30). Plaintiff's counsel indicated that she had spoken with Plaintiff prior to the hearing and was informed that he would attend. (AR 11, 29). The ALJ determined that Plaintiff constructively waived his right to appear, and the hearing was held in his absence to take the vocational expert's testimony. (AR 11, 29-30). Subsequent to the hearing, the ALJ issued a Notice to Show Cause for Failure to Appear. (AR 105-07). In a letter dated November 19, 2016, Plaintiff's counsel asserted, "both myself and [Plaintiff] had significant delays getting to the hearing office in time for the hearing due to excessive traffic in the Los Angeles area." (AR 108). In a letter dated November 29, 2017, Plaintiff indicated that he has spoken to counsel prior to the hearing, who informed him that she would be late to the hearing. (AR 109-10). The ALJ concluded that "failure to account for traffic conditions does not constitute good cause for failure to appear." (AR 11) (citing 20 C.F.R. §§ 416.1411, 416.1436, 416.1457(b)).

Appeals Council denied Plaintiff's request for review. (AR 1-3). This action followed on May 26, 2017.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on November 2, 1964, and was fifty (50) years old on the date the application was filed. (AR 114). Plaintiff has a high-school degree and completed one year of college. (AR 135, 492). He has never been married and lives with his siblings. (AR 114, 493). Plaintiff stopped working in April 1998 because he "was incarcerated for 17 years." (AR 134). He alleges disability due to high blood pressure, bipolar disorder, and rheumatoid arthritis. (AR 134).

Plaintiff has a history of anxious, depressive, and psychotic symptoms. While he was incarcerated, Plaintiff was diagnosed with bipolar disorder and schizoaffective disorder. (AR 247, 546). Nevertheless, the prison records indicate that while compliant with his medications, Plaintiff's mental condition was unremarkable. (AR 247, 546, 548, 550-51). He was relaxed and contented, fully oriented, with a stable mood, congruent affect, normal memory and concentration, and an intact perception. (AR 247). Plaintiff denied any suicidal or homicidal ideations. (AR 247). Plaintiff was released from prison in August 2015. (AR 134, 139).

In November 2015, Gul Ebrahim, M.D., performed a consultative psychiatric evaluation at the request of the Agency. (AR 491-95).

3

Plaintiff complained of a seventeen-year history of bipolar depression caused partly by a history of childhood trauma. (AR 491-92). Other than Dr. Ebrahim observing an anxious affect, a mental status examination was largely unremarkable. (AR 493-94). Plaintiff exhibited normal eye contact, adequate grooming and hygiene, calm psychomotor activity, linear and goal directed thought process, no evidence of auditory or visual hallucinations, full cognitive orientation and memory, normal concentration and memory, and intact insight and judgment. (AR 493-94). Dr. Ebrahim observed no manifestations of a bipolar disorder. (AR 494). He opined that Plaintiff's ability to relate to and interact with coworkers, colleagues, and supervisors, and his ability to understand and carry out simple instructions are normal. (AR 494). Dr. Ebrahim further opined that Plaintiff's ability to maintain focus and concentration to do work related activities is "normal limited." (AR 494). Finally, Dr. Ebrahim concluded that Plaintiff's ability to understand and carry out complex or detailed instructions and his ability to cope with workplace stress are "mildly limited." (AR 494-95).

In December 2015, Plaintiff underwent an initial mental health evaluation at the Los Angeles County Department of Mental Health ("LACDMH"). (AR 582). Plaintiff complained of disturbed sleep and appetite, nightmares, and psychotic features. (AR 582). Other than Plaintiff's mood reflecting a known stressor, a mental status examination was unremarkable. (AR 582). Plaintiff received further treatment at LACDMH between March and July 2016. (AR 557-61, 570-71, 573, 580). Plaintiff complained of mood shifts,

auditory and visual hallucinations, and manic episodes. (AR 557, 571, 580). On examination, his treatment provider observed a blunted affect. (AR 580). The provider also observed a cooperative attitude, full orientation, unimpaired speech, normal eye contact, linear and goal directed associations, appropriate grooming, calm motor activity, unimpaired intellectual funding and memory, no apparent hallucinations or delusions, and no suicidal or homicidal ideations. (AR 570-71, 580, 583). In March 2016, Plaintiff told a treatment provider that his psychotropic medications were "tremendously" helpful at managing his symptoms. (AR 504-05, 580). In May 2016, Plaintiff reported feeling "pretty good" with his medications. (AR 578). He described his concentration, energy, and motivation as "good." (AR 578).

In January 2016, Luanna E. Cabrera, Ph.D., performed a psychological evaluation at the request of the Department of Rehabilitation. (AR 585-88). Plaintiff complained of auditory hallucinations and feelings of hopelessness. (AR 585-87). He reported multiple stressors, including an "unstable" living situation and lack of income. (AR 585-87). He acknowledged a history of incarceration and substance abuse. (AR 585). Testing indicated that Plaintiff's general intelligence is significantly below average. (AR 587). Nevertheless, Dr. Cabrera observed an average work pace, a pleasant, friendly and cooperative attitude, casual and appropriate attire, and full orientation, with no evidence of unusual behaviors. (AR 586). Plaintiff's scores on the Beck Depression Inventory indicated mild symptoms of depression. (AR 587). Dr. Cabrera diagnosed schizophrenia,

learning disorder, mathematics disorder, and personality disorder. (AR 587). Nonetheless, she found that Plaintiff was ready for vocational training. (AR 588).

In March 2016, Plaintiff underwent a mental health evaluation at Telecare Mental Health Urgent Care Center. (AR 525). Plaintiff complained of insomnia, restlessness, and auditory and visual hallucinations. (AR 525). Plaintiff acknowledged, however, that when he is compliant with his medications, the voices are "contained." (AR 498, 531). Other than finding circumstantial thought process and decreased judgment and impulse control, the evaluating psychiatrist's examination was largely unremarkable. (AR 533). The psychiatrist observed full orientation, engaged attitude, normal speech, euthymic mood, appropriate affect, logical thought processes, normal eye contact, normal insight and mood, and no suicidal or homicidal ideations. (AR 528, 533).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful

employment that exists in the national economy.  _Tackett v. Apfel_, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)     Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)     Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)     Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

_Tackett_, 180 F.3d at 1098-99; _see also_ _Bustamante v. Massanari_, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 20-21). At step one, the ALJ

found that Plaintiff has not engaged in substantial gainful activity since August 20, 2015, the application date. (AR 13). At step two, the ALJ found that Plaintiff's asthma, hypertension, personality disorder, and schizoaffective disorder are severe impairments. (AR 13). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 14).

The ALJ assessed Plaintiff's RFC and concluded that he can "perform the full range of work at all exertional levels but with the following nonexertional limitations: no more than simple tasks; no public contact; no more than occasional contact with coworkers and supervisors; and no concentrated exposure to dust, fumes, and chemicals." (AR 14). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 19). Based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager and laborer. (AR 20). Accordingly, the ALJ found that Plaintiff is not under a disability as defined by the Social Security Act, since August 20, 2015, the application date. (AR 20).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

In his sole claim, Plaintiff contends that the ALJ improperly rejected the medical opinions of his treating physicians. (Dkt. No. 21 at 3). He argues that the ALJ "neither offered a legitimate conclusion [n]or a legally sufficient reason why he [sic] rejects the opinion[s] of Dr. Chung and Dr. Fam." (Id. at 4).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)); see also 20 C.F.R. § 416.927(c)(2)-(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart,

427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (The "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

**A.   Dr. Chung**

On May 17, 2016, Sujin Chung, M.D., a psychiatrist with LACDMH, completed a mental capacity assessment form at Plaintiff's

request.  (AR 510-12).  Dr. Chung opined that Plaintiff's mental impairments cause "marked" limitations in Plaintiff's ability to maintain attention and concentration for <u>extended</u> periods and "moderate" limitations in his ability to remember locations and work-like procedures; understand, remember and carry out detailed instructions; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workweek without interruptions from psychologically based symptoms; perform at a consistent pace with a standard number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (AR 510-12) (emphasis in original).  Dr. Chung also concluded that Plaintiff had only "slight" limitations in his ability to understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday without interruptions from psychologically based symptoms; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions.  (AR 510-12).

Plaintiff argues that the ALJ "failed to articulate a legally sufficient rationale to reject [Dr. Chung's] opinion[ ]." (Dkt. No. 21 at 3). To the contrary, the ALJ gave Dr. Chung's opinion "significant probative weight." (AR 18). The ALJ found that Dr. Chung's opinion was "supported by the objective medical evidence, which shows a history of complaints of depressive and psychotic symptoms, as well as some abnormalities of speech, but otherwise mostly normal cognitive, expressive, intellectual, receptive, and social functioning." (AR 18). The ALJ further acknowledged that Dr. Chung's "lengthy treating relationship" with Plaintiff "lends her opinion additional probative weight." (AR 18).

Nevertheless, Plaintiff asserts that the ALJ "ignore[d] the marked limitation found by Dr. Chung in assessing the residual functional capacity of [Plaintiff]." (Dkt. No. 21 at 5). Essentially, Plaintiff's argument is that the ALJ failed to fully incorporate Dr. Chung's opinion in Plaintiff's RFC. Indeed, in determining a claimant's RFC, the ALJ must consider all relevant evidence, including residual functional capacity assessments made by treating physicians. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(a)(2), 416.913(a)(2).

Here, Dr. Chung's opinion is fully incorporated into Plaintiff's RFC. The RFC's limitation to simple tasks is supported by Dr. Chung's opinion that Plaintiff's mental impairments do not cause significant limitations in his ability to understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; complete a normal

14

workday without interruptions from psychologically based symptoms; and ask simple questions or request assistance. (Compare AR 14, with id. 510-11). Further, Dr. Chung's opinion that Plaintiff's mental impairments cause "moderate" limitations in his ability to understand, remember, and carry out detailed instructions (AR 510) is not inconsistent with a limitation to simple tasks. Moreover, Dr. Chung's finding that Plaintiff has "marked" limitations in his ability to maintain attention and concentration over an extended period is consistent with a limitation to simple tasks. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (finding no inconsistencies with the VE's testimony that a person with "a marked limitation in her ability to maintain concentration over extended periods" can perform simple tasks).

Plaintiff nevertheless contends that "a limitation to simple, repetitive work by itself does not adequately encompass difficulties with concentration, persistence, or pace." (Dkt. No. 21 at 5) (citing Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211, 212 (9th Cir. 2009) (finding that "the ALJ's initial hypothetical question to the vocational expert referenc[ing] only 'simple, repetitive work,' without including limitations on concentration, persistence or pace . . . was error"); see also Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert."). However, Brink and Lubin are

unpublished cases and therefore do not control the outcome here. See 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent . . . ."). Further, an earlier published Ninth Circuit decision has arguably held otherwise. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that RFC limiting a claimant to simple, repetitive work "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony"); accord Miller v. Colvin, No. CV 15-7388, 2016 WL 4059636, at *2 (C.D. Cal. July 28, 2016) ("ALJ may translate moderate limitations into a limitation to simple repetitive tasks based on record"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). As the Court cannot conclude that the ALJ's interpretation of Dr. Chung's opinion was irrational, the ALJ's decision must be upheld.

Even if the Ninth Circuit precedent were to require that limitations in concentration, persistence, or pace be explicitly included in the hypothetical question to the VE, the error here would be harmless. The ALJ acknowledged that Plaintiff has moderate restrictions in concentration, persistence, or pace. (AR 14). However, the ALJ's hypothetical question restricted Plaintiff only to "simple tasks, avoiding public contact, with only occasional interaction with coworkers and supervisors." (AR 32). Nevertheless, the jobs identified by the VE were limited to those requiring only Level 2 reasoning. (AR 33) (identifying hand

16

packager, DOT 920.587-018, and laborer in a store, DOT 922.687-058, as jobs that exist in sufficient numbers in the national economy that someone with Plaintiff's RFC could perform); see <http://www.govtusa.com/dot> (jobs classified with DOT numbers 920.587-018 and 922.687-058 involve Level 2 reasoning) (last visited March 7, 2018). Jobs with Level 2 reasoning adequately encompass moderate difficulties in concentration, persistence, or pace, such as Plaintiff's. Turner v. Berryhill, 705 F. App'x 495, 498-99 (9th Cir. 2017) ("The RFC determination limiting Turner to 'simple, repetitive tasks,' which adequately encompasses Turner's moderate difficulties in concentration, persistence, or pace, is compatible with jobs requiring Level 2 reasoning."); cf. Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (finding "an inherent inconsistency between [the claimant's] limitation to simple, routine tasks, and the requirements of Level 3 Reasoning").

**B.    Dr. Fam**

On October 21, 2016, Hanaa W. Fam, M.D., completed a Mental Capacity Assessment form at Plaintiff's request. (AR 590-92). Dr. Fam opined that Plaintiff's mental impairments cause "marked" limitations in Plaintiff's ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods;  perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or

17

workweek without interruptions from psychologically based symptoms; perform at a consistent pace with a standard number and length of rest periods; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (AR 590-92) (emphasis in original). Dr. Fam also concluded that Plaintiff would likely miss four or more days per month. (AR 591).

The ALJ gave Dr. Fam's opinion "little probative weight." (AR 19). The ALJ rejected Dr. Fam's opinion because it was "not supported by the other evidence of record, including the objective medical evidence . . . or the opinion of Dr. Chung." (AR 19). The ALJ further noted that "the record contains no evidence of Dr. Fam's treating relationship with [Plaintiff]. Without such evidence, the undersigned cannot determine the basis for Dr. Fam's extreme assessments." (AR 19). Plaintiff argues that the ALJ did not provide a legally sufficient reason for rejecting Dr. Fam's opinion but does not dispute any of the specific reasons given by the ALJ. (Dkt. No. 21 at 4). The Court disagrees.

The ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Fam's opinion. First, Dr. Fam's opinion is contrary to the objective medical evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1046 (9th Cir. 2007) ("the weight of the medical evidence in the record contradicts . . . the medical opinions of Lingenfelter's treating physicians"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians'

opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.") (citations omitted). As the ALJ noted, "[t]he clinical findings with respect to [Plaintiff's] mental condition . . . were unremarkable." (AR 17). Dr. Ebrahim observed normal eye contact, adequate grooming and hygiene, calm psychomotor activity, linear and goal directed thought process, no evidence of auditory or visual hallucinations, full cognitive orientation and memory, normal concentration and memory, and intact insight and judgment. (AR 493-94; see id. 17). Dr. Cabrera observed an average work pace, a pleasant, friendly and cooperative attitude, casual and appropriate attire, and full orientation, no evidence of unusual behaviors, and only mild symptoms of depression. (AR 586-87; see id. 17). The evaluating psychiatrist at Telecare observed full orientation, engaged attitude, normal speech, euthymic mood, appropriate affect, logical thought processes, normal eye contact, normal insight and mood, and no suicidal or homicidal ideations. (AR 528, 533; see id. 17). Finally, the treating providers at LACDMH observed a cooperative attitude, full orientation, unimpaired speech, normal eye contact, linear and goal directed associations, appropriate grooming, calm motor activity, unimpaired intellectual funding and memory, no apparent hallucinations or delusions, and no suicidal or homicidal ideations. (AR 570-71, 580, 583; see id. 17).

As the ALJ found, "the record shows [Plaintiff's] symptoms improved with treatment." (AR 17). In March 2016, Plaintiff reported to his LACDMH treatment providers that his psychotropic medications were "tremendously" helpful. (AR 504-05, 580; see id.

17). In May 2016, Plaintiff reported feeling "pretty good" with his medications. (AR 578; see id. 17). He described his concentration, energy, and motivation as "good." (AR 578). This objective evidence undermines Dr. Fam's opinion.

In addition, Dr. Fam's opinion was contrary to the opinion of Dr. Chung, Plaintiff's treating psychiatrist. See Bayliss, 427 F.3d at 1216 (an ALJ may reject a treating doctor's opinion if it is contradicted by another doctor's opinion). While Dr. Chung agreed with Dr. Fam that Plaintiff has marked limitations in his ability to maintain attention and concentration for extended periods, in all other respects, Dr. Chung found Plaintiff to be significantly less limited than Dr. Fam opined. (Compare AR 509-12, with id. 590-92). The ALJ gave Dr. Chung's opinion more weight not only because it was supported by the objective medical evidence but also because of Dr. Chung's lengthy treating relationship with Plaintiff. (AR 18-19).

Finally, the ALJ properly rejected Dr. Fam's opinion because the record contained no evidence of her treating relationship with Plaintiff. (AR 19). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Not only is Dr. Fam's opinion brief and conclusory, but the record is devoid of any clinical findings by Dr. Fam to support her extreme limitations. See Tonapetyan, 242 F.3d at 1149 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's

opinion that is conclusory and brief and unsupported by clinical findings."). Again, the absence of a true treating physician relationship with Plaintiff is a legitimate reason to reject Dr. Fam's opinion.

In sum, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Fam's opinion little weight. Accordingly, because substantial evidence supports the ALJ's assessment of Dr. Fam's opinion, no remand is required.

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 12, 2018

                                    /S/
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

**THIS ORDER IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS, OR ANY OTHER LEGAL DATABASE.**